**Michael A. PECK, Appellant,**

v.

**Pamela B. PECK, Appellee.**

No. 05–04–00919–CV.

Court of Appeals of Texas, Dallas.

July 13, 2005.

Rehearing Overruled Sept. 30, 2005.

*Culver v. Pickens,* 142 Tex. 87, 176 S.W.2d 167, 170 (1943).

Georganna L. Simpson, Law Office of Georganna L. Simpson, Dallas, for Appellant.

Michelle May, The May Firm, Dallas, for Appellee.

Before Justices WRIGHT, BRIDGES, and FITZGERALD.

## OPINION

Opinion by Justice FITZGERALD.

Michael Peck (Husband) appeals the property division and the injunction entered in the divorce decree terminating his marriage to Pamela Peck (Wife). In six issues, he asserts the trial court erred in (1) characterizing disability insurance benefits as community property and (2) in entering an injunction prohibiting him, when in possession of the child, from permitting any woman with whom he is in an intimate or dating relationship to remain overnight in the same residence or lodging. We conclude the trial court did not wrongly characterize the disability insurance benefits and that error, if any, in the entry of the injunction was harmless. We affirm the trial court's judgment.

## BACKGROUND

The parties married in 1980. They separated in January 2003, and Wife filed for divorce. They have one child, born in February 1995.

Husband is a dentist specializing in periodontics and endodontics. In 1992, as Husband prepared to open his practice, he borrowed money from a bank, and at the

bank's insistence, he took out a disability insurance policy. He subsequently purchased three more policies for a total of four disability policies. The premiums for the policies were not paid by Husband's dental practice but were paid out of the parties' joint account to avoid federal income taxation of the disability benefits. In late 1998, Husband's hearing began to seriously deteriorate, and by trial he had no speech recognition in one ear and only about twenty percent in the other ear. Although he continued to practice dentistry, the insurance company declared him presumptively disabled as of January 1, 2000. The four policies paid benefits of $8464 per month and, according to a letter from the insurance company's Senior Disability Benefits Specialist, will continue to do so for the rest of his life.[1] Although he received disability insurance payments and had little hearing remaining, Husband testified he intended to keep practicing until he considered it unsafe or too frustrating due to his hearing loss. The trial court ruled the disability benefits were community property and ordered Husband and Wife each receive half of the monthly payments under the policies.

After the conclusion of the trial, Husband began cohabiting with a divorced woman who had an eleven-year-old son. Wife filed a motion requesting the trial court enjoin the parties from having a person of the opposite sex overnight when in possession of the child. Husband testified he opposed the motion, explained that his relationship with the woman was "happily monogamous," and stated that the child and the woman's child got along "excellently." Husband testified that the relationship was beneficial to the child and in his best interest. After hearing this evidence, the trial court imposed an injunction prohibiting the parties from:

> Permitting an unrelated adult of the opposite sex with whom Petitioner and/or Respondent has or might have an intimate or dating relationship to remain overnight in the same residence or temporary lodging while in possession of the child.

Husband filed a motion for new trial challenging the trial court's characterization of the disability insurance benefits and the propriety of the injunction. The trial court denied the motion.

## CHARACTERIZATION OF DISABILITY POLICIES

In the first issue, Husband contends the trial court erred in characterizing the disability insurance benefits as community property and dividing future payments between the parties.

Under Texas law, a spouse's separate property consists of: (1) the property owned or claimed by the spouse before marriage; (2) the property acquired by the spouse during marriage by gift, devise, or descent; and (3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage. TEX. FAM.CODE ANN. § 3.001 (Vernon 1998); see TEX. CONST. art XVI, § 15. All other property is community property. TEX. FAM. CODE ANN. § 3.002. Property acquired after the dissolution of the marriage, including earnings from employment, is the spouse's separate property. The trial court has no discretion to divest spouses of their separate property and to distribute it as community property. *Cameron v. Cameron,*

---

1. Husband testified he would receive the full payments until he reached age sixty-five (Husband was fifty-two years old at the time of trial), after which he would receive about $3000 less per month for the rest of his life. On appeal, Husband does not dispute that the full amount of the disability payments will continue until his death.

641 S.W.2d 210, 220 (Tex.1982); *Barnard v. Barnard,* 133 S.W.3d 782, 789 (Tex. App.-Fort Worth 2004, pet. denied). However, all property possessed by the spouses is presumed to be community property, and a spouse must prove by clear and convincing evidence that property is that spouse's separate property. TEX. FAM. CODE ANN. § 3.003. Under the inception of title doctrine, contractual property rights, acquired during the marriage with community funds or through employment that vest during the marriage are community property. *See Barnett v. Barnett,* 67 S.W.3d 107, 111 (Tex.2001).

## DISABILITY INSURANCE BENEFITS

■ In the first issue, Husband contends the trial court erred in characterizing the disability insurance benefits as community property and dividing future payments between the parties. Wife asserts Husband judicially admitted at trial that the disability policies were community property, estopping him from contending otherwise.

During the trial, Husband's attorney said in his opening statement that under Texas law, the disability policy "would be considered a community asset," and he asked the court to use its discretion in dividing that asset. During Wife's case in chief, Husband was called to testify, and he stated he did not agree the disability policy was community property, regardless

of what the law was. During Husband's case in chief, Husband's Exhibit A was offered as a summary of his testimony of his proposal for division of the parties' community estate. In that exhibit, Husband proposed the insurance disability benefits be divided equally between the parties for three years or until he is unable to practice dentistry, whichever comes first, and that Husband then receive all the benefits. Husband also testified consistent with this part of Exhibit A.[2] Husband's Exhibit E, his amended inventory and appraisement, also states the disability policy benefits were community property.[3] During closing argument, Husband's attorney, referring to the disability policy benefits, stated, "So granted it is a piece of community property, but ... this Court has the discretion to make an equitable distribution of the property...." After trial, Husband filed a Brief on the Issue of the Disability Policy, which stated, "The evidence shows that the disability policy was purchased during marriage, with community funds, and is therefore pursuant to Texas law, community property." The brief then urged the court to divide the disability policy benefits equally for only three years or until Husband is unable to practice dentistry, whichever occurs first, and after the three years or Husband's inability to practice, to award all the disability insurance benefits to Husband.[4] When

2. Because the court has no authority to divest a party of separate property, *see Cameron,* 641 S.W.2d at 220, Husband's testimony and exhibits stating the disability policy benefits should be divided between the parties conceded their community character.

3. Exhibit E does not expressly state the policies were community property. The exhibit first lists various real, personal, and intangible assets; then it lists other " Community Claim[s]" and "Community Liabilities"; and finally "Separate Estate of Husband" and "Separate Estate of Wife." Because the exhib-

it separately lists the parties "Separate Estate[s]," the other property listed in the exhibit, including the benefits paid by the disability insurance policies, are presumptively community property.

4. In Appellant's Reply Brief, Husband states, "*On October 30, 2003,* Husband filed a brief to support his position that the disability policies were his separate property," and cited to Husband's Brief on the Issue of the Disability Policy. We disagree with Husband's interpretation of this document. Nowhere in the Brief on the Issue of the Disability Policy did

Wife moved for judgment attaching a draft judgment, Husband did not object to the division of the disability insurance benefits. The trial court then rendered a decree dividing the disability payments equally.

■■■ A judicial admission is a formal waiver of proof that dispenses with the production of evidence on an issue. *Lee v. Lee*, 43 S.W.3d 636, 641 (Tex.App.-Fort Worth 2001, no pet.). A judicially admitted fact is established as a matter of law, and the admitting party may not dispute it or introduce evidence contrary to it. *Id.; Dutton v. Dutton*, 18 S.W.3d 849, 853 (Tex.App.-Eastland 2000, pet. denied); *Roosevelt v. Roosevelt*, 699 S.W.2d 372, 374 (Tex.App.-El Paso 1985, writ dism'd). This rule is based on the public policy that it would be absurd and manifestly unjust to permit a party to recover after he has sworn himself out of court by a clear and unequivocal statement. *U.S. Fid. & Guar. Co. v. Carr*, 242 S.W.2d 224, 229 (Tex.Civ. App.-San Antonio 1951, writ ref'd); *Lee*, 43 S.W.3d at 641; *Roosevelt*, 699 S.W.2d at 374. Five conditions must have occurred for a party's admission to be conclusive against him: (1) the declaration relied upon must have been made in the course of a judicial proceeding; (2) the declaration was contrary to an essential fact embraced in the theory of recovery or defense asserted by the party; (3) the

statement was deliberate, clear, and unequivocal; (4) giving conclusive effect to the declaration would not run contrary to public policy; and (5) the declaration related to a fact upon which a judgment for the opposing party was based. *U.S. Fid. & Guar. Co.*, 242 S.W.2d at 229; *Lee*, 43 S.W.3d at 641–42.

These facts meet the five requirements set out in *U.S. Fidelity & Guaranty Co.* for a judicial admission because (1) the admissions were made during the course of a judicial proceeding, (2) the admissions are contrary to the essential fact now argued by Husband that the policies are his separate property, (3) the admissions were deliberate, clear, and unequivocal in that they were prepared and made with the assistance and approval of counsel, (4) giving effect to the admissions of the community character of the disability policy benefits would be consistent with the public policy that a party should not be permitted to recover when he has sworn himself out of court by a clear and unequivocal statement, and (5) the admissions support judgment for Wife. *See U.S. Fid. & Guar. Co.*, 242 S.W.2d at 229; *Lee*, 43 S.W.3d at 641–42.

Except for one contrary statement in his testimony, Husband made no assertion that the disability insurance policies were

Husband take the position that the disability insurance benefits were his separate property. As stated above, the post-trial brief on disability benefits stated the disability policies were community property. Husband cited numerous out-of-state authorities holding disability insurance benefits were separate property in those other states. However, Husband did not cite these authorities to show the disability insurance benefits are separate property under Texas law. Instead, Husband (Respondent) cited the cases to show that after three years, awarding all the disability insurance benefits to Husband would be fair and equitable:

Respondent respectfully submits the following cases and the legal reasoning in each, summarized for the court, not because he expects this court to overturn Texas law but simply to show that the law in many other jurisdictions, if applied here, would dictate that the disability policy would lead a court to decide that Respondent should receive the disability policy as his separate property, and that such a decision would be the fair and equitable result. Respondent re-urges that court to divide the disability policy as Respondent has requested. Respondent provides these cases and the reasoning within each one as an aid to the court in reaching its decision.

his separate property until after the trial court entered its initial divorce decree. Only then did Husband make his separate-property assertion in a motion for new trial and a motion to modify, correct, or reform the judgment, both filed the same day. At the hearing on those motions, Wife's attorney argued Husband had conceded the community character of the disability insurance benefits during trial.

Because Husband had judicially admitted the policies were community property during trial in his testimony, exhibits, opening statement, and closing argument, as well as in his post-trial brief on the issue of the disability policies, this issue was conclusively proven, and Husband was barred from asserting otherwise. *See Lee,* 43 S.W.3d at 641; *Dutton,* 18 S.W.3d at 853. We conclude the trial court did not err in characterizing the disability insurance benefits as community property and dividing future payments between the parties.[5] We overrule Husband's first issue.

In his second issue, Husband asserts the trial court's incorrect characterization of the disability insurance benefits resulted in the court's failing to make a just and right division of the marital estate. Because we have held the trial court did not err in characterizing the disability insurance benefits as community property, Husband's argument lacks merit. We overrule Husband's second issue.

## INJUNCTION

■ The trial court's final order permanently enjoined both parties, while in the possession of the child, from permitting persons of the opposite sex with whom they have or might have an intimate or dating relationship from remaining overnight in the same residence or lodging. In his third issue, Husband asserts the trial court abused its discretion by entering this permanent injunction. In his fourth, fifth, and sixth issues, Husband argues the evidence is legally and factually insufficient to support the trial court's findings of facts and conclusions of law that, in turn, support the permanent injunction.

### Substance of the Injunction

We address first the substance of the trial court's injunction. The parties have not identified, and our research has not located, a case speaking to this type of restriction upon the conduct of parents who have joint custody of a child. Accordingly, we find no specific legal authority that the trial court was bound to follow when asked to enter this order. We look, therefore, to general principles of visitation and custody in our review of these issues.

■ Husband brings his challenge to the substance of the court's injunction in the form of sufficiency-of-the-evidence points. But the trial court's judgment regarding what serves the best interest of a

---

5. After submission, Husband filed a motion requesting we take into consideration the new legislative provisions codifying how disability insurance benefits are characterized. *See* Act of May 24, 2005, 79th Leg., R.S., H.B. 410, § 1 (to be codified at TEX. FAM.CODE ANN. § 3.008). As discussed above, Husband waived the issue of the characterization of the disability insurance benefits by judicially admitting the benefits were community property. Accordingly, we need not consider the new legislation. Furthermore, section 2 of the Act states, "The changes in law made by this Act apply ... to a suit for dissolution of a marriage pending before a trial court on or filed on or after the effective date of this Act...." Act of May 24, 2005, 79th Leg., R.S., H.B. 410, § 2. The effective date of the Act is September 1, 2005. Thus, because the suit for dissolution of marriage was filed before the effective date, and it will not be pending before the trial court after the effective date, we conclude the Act does not apply.

child with regard to visitation is a discretionary function and will only be reversed upon a determination that the trial judge has abused his discretion. *MacCallum v. MacCallum,* 801 S.W.2d 579, 582 (Tex. App.-Corpus Christi 1990, writ denied). Moreover, the trial court is given wide latitude in determining the best interests of a minor child. *Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex.1982). Under this abuse-of-discretion standard, legal and factual insufficiency are not independent grounds for asserting error, but are merely relevant factors in assessing whether a trial court abused its discretion. *Niskar v. Niskar,* 136 S.W.3d 749, 753 (Tex.App.-Dallas 2004, no pet.); *In re N.A.S.,* 100 S.W.3d 670, 672 (Tex.App.-Dallas 2003, no pet.). Therefore, in reviewing the substance of the trial court's order, we ask whether the court acted without reference to any guiding rules or principles, i.e., whether the order was arbitrary or unreasonable. *See Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985).

At the hearing on Wife's motion to include the injunction in the divorce decree, Wife testified that because Husband and his girlfriend were not married, she did not think it was in the child's best interest for the child to spend the night with both present in the same residence. Husband testified that he was in a stable, monogamous relationship with a recently divorced woman who had an eleven-year-old child whom the parties' child "gets along with

excellently." Husband testified this relationship was beneficial to the child and was in his best interest because "[it] provides him with a family unit." Husband testified that although he and the woman had no plans to marry, they were planning to purchase a house together. Husband also testified that heretofore, when he had possession of the child, Husband had slept either in the living room or with the child in the child's bedroom.

In its findings of fact, the trial court found that Husband was involved in a romantic relationship and was cohabiting with a woman with whom he had no current plan to marry, that during the pendency of the divorce, Husband "exposed the child to several different women in dating relationships," and "[a] nine-year-old child would have a very hard time discerning a relationship other than a marriage relationship." The findings and conclusions concerning the injunction also stated the injunction was in the child's best interest; was consistent with providing a safe, stable, and nonviolent environment for the child; was in the best interest of the child's emotional development; and was "necessary to promote the emotional and physical needs of the child now and in the future, to protect the child from emotional and physical danger now and in the future, to promote the stability of the child's environment with each parent, and to promote the moral welfare of the child." [6]

---

6. The trial court's findings of fact and conclusions of law concerning the injunction were as follows:

**[Finding of Fact 11]** **It is in the best interest of the child that [Wife] and [Husband], and their agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, be permanently enjoined as follows:**

**Permitting an unrelated adult of the opposite sex with whom Petitioner and/or Respondent has or might have an intimate or dating relationship to remain overnight in the same residence or temporary lodging while in possession of the child.**
[Finding of Fact 12] [Husband] currently resides in the same household with an unmarried cohabitant of the opposite sex, with whom he has a romantic relationship but has no current plan to marry.

We find no legal authority that directly required or prohibited the trial court's entering the order forbidding overnight dates during visitation of the child. Wife relies upon *MacCallum v. MacCallum* in support of the trial court's order. However, in that case the trial court's restriction concerned the activities of the *children* while they were visiting their father, not the activities of the father. 801 S.W.2d at 586–87. Nevertheless, we agree that *MacCallum* speaks to the trial court's broad authority to place conditions on visitation that are in the child's best interest. *See id.* at 586.

Husband, on the other hand argues that the trial court's discretion is not unlimited—with which we agree—and that the trial court's order violates his constitutional rights—with which we do not agree. Specifically, we reject Husband's argument that the substance of the order violated his constitutional right of substantive due process because, in the absence of a finding that he is an unfit parent, the order interferes with his fundamental liberty interest in making decisions concerning the care of his child.[7] Every custody and visitation order limits a parent's "rights" to some extent; that is the nature of such an order. But Texas courts have held that applying the best-interest-of-the-child standard does not violate a parent's due process rights. *See In re R.D.Y.*, 51 S.W.3d 314, 324 (Tex. App.-Houston [1st Dist.] 2001, pet. denied); *In re H.D.O.*, 580 S.W.2d 421, 424 (Tex. Civ.App.-Eastland 1979, no writ).

Husband cites three cases for the proposition that sexual activity of a parent committed outside the presence of the child is an insufficient basis on which to base a restriction of his possession of the child, so long as his fitness as a parent has not been called into question. *See Wolfe v. Wolfe*, 918 S.W.2d 533, 540 (Tex.App.-El Paso 1996, writ denied); *In re W.G.W.*, 812 S.W.2d 409, 414–15 (Tex.App.-Houston [1st Dist.] 1991, no writ); *Schwartz v. Jacob*, 394 S.W.2d 15, 18 (Tex.Civ.App.-Houston 1965, writ ref'd n.r.e.). We do not find these cases helpful. Each of the three deals with sexual conduct that literally takes place in a different residence from the child's or when the child is traveling

[Finding of Fact 13] During the pendency of the divorce, [Husband] exposed the child the subject of this suit to several different women in dating relationships with Michael A. Peck.

[Finding of Fact 14] **A nine-year-old child would have a very hard time discerning a relationship other than a marriage relationship.**

[Conclusion of Law 9] **The permanent injunction is consistent with the best interest of the child in order to assure that the child will have frequent and continuing contact with both [Wife] and [Husband], to provide a safe, stable and nonviolent environment for the child, and to encourage both [Wife] and [Husband] to share in the rights and duties of raising the child after the dissolution of the marriage.**

[Conclusion of Law 10] **The permanent injunction is necessary to promote the emotional and physical needs of the child now and in the future, to protect the child from emotional and physical danger now and in the future, to promote the stability of the child's environment with each parent, and to promote the moral welfare of the child.**

[Conclusion of Law 11] **It is in the best interest of the child's emotional development that the permanent injunction be entered restricting the parties' right to have unrelated overnight guests of the opposite sex in the presence of the child.**

The findings and conclusions in bold-faced type are challenged by Husband.

7. Husband's complaints that the trial court's order violates his rights to free association (because the order interferes with Husband's decisions about whom he may "associate" with while in possession of his son) and procedural due process (because he did not receive adequate notice of the hearing on Wife's motion) were not raised below and will not be addressed for the first time here.

and away from his residence. *See id.* Moreover, it does not appear in any of these cases that the parent was living with the non-parent sexual partner. *See id.* The cases do not speak to the situation before this Court.

We are unaware of any legal authority that would compel the trial court to rule differently on this issue.

Nor do the facts of this case compel a different outcome than the trial court's decision. Wife testified that, in her opinion, the kind of overnight visits prohibited by the injunction were not in the best interest of the child; Husband disagreed. The trial court was charged with making the decision based upon that testimony, but also upon his experience with and understanding of the individuals involved and their circumstances. One reason we accord such latitude to the trial court is that it "is in the best situation to observe the demeanor and personalities of the witnesses and can 'feel the forces, powers, and influences that cannot be discerned by merely reading the record.'" *Niskar*, 136 S.W.3d at 753 (quoting *N.A.S.*, 100 S.W.3d at 673). In this instance the trial court had considerable time with the parties and undoubtedly understood better than this Court could the "forces, powers, and influences" that governed the relationships between and among Husband, Wife, and their son. Moreover, the court imposed the same restriction upon both parties. The court also referred to the visitation provision as a "standard" one. There is no reason on this record to assume Husband was unfairly treated. *See also Capello v. Capello*, 922 S.W.2d 218, 220 (Tex.App.-San Antonio 1996, no writ) ("The trial court, in considering the best interest of the child, had the discretion to weigh and compare appellant's inconvenience with the safety and well-being of the child.").

We find no abuse of discretion in the substance of the trial court's order.

### The Injunctive Form of the Order

 Husband's remaining complaints concerning the injunction can fairly be said to challenge the procedures surrounding the entry of this part of the final order. Initially, Husband complains that Wife's pleading will not support this portion of the decree. We disagree. "Pleadings are of little importance in child custody cases and the trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of a child should be unhampered by narrow technical rulings." *MacCallum*, 801 S.W.2d at 586. Specifically, the trial court has discretion to place conditions on parents' visitation even if the pleadings do not request such conditions. *Id.*

 Husband further complains that the very presence of an injunction within the court's order is not contemplated by the family code, which never mentions permanent injunctions. Although the family code does not speak to permanent injunctions, we have identified many Texas cases that address final orders in family law matters or divorce decrees that incorporate permanent injunctions. *See, e.g., In re A.C.J.*, 146 S.W.3d 323 (Tex.App.-Beaumont 2004, no pet.); *Walter v. Walter*, 127 S.W.3d 396 (Tex.App.-Dallas 2004, no pet.); *In re A.J.L.*, 108 S.W.3d 414 (Tex.App.-Fort Worth 2003, pet. denied); *Marriage of Edwards*, 79 S.W.3d 88 (Tex.App.-Texarkana 2002, no pet.). We find no bar to incorporating language of injunction into a divorce decree.

 Finally, Husband argues that Wife offered insufficient evidence to support the traditional requirements of a permanent injunction, namely a wrongful act, imminent harm, irreparable injury, and no adequate remedy at law. *See Walter*, 127

**36**

S.W.3d at 398. Where the family code does speak specifically to injunctive relief (i.e., in temporary orders), it specifically dispenses with the requirement of establishing such prerequisites. TEX. FAM.CODE ANN. § 105.001.[8] Moreover, we know that where the best interests of the child are at issue as they are here, sufficiency of the evidence is not the correct standard for review. *See Niskar*, 136 S.W.3d at 753. We have reviewed the record surrounding the entry of this injunction, and we find no abuse of discretion in the procedure employed.

In conclusion, we disagree that the trial court's use of the permanent-injunction vehicle should somehow invalidate the order it embodies. Indeed, a final divorce decree that includes provisions concerning custody and possession of a child is capable of being modified. *See generally* TEX. FAM.CODE ANN. ch. 156 (Vernon 2002). Likewise, a permanent injunction remains in place unless the trial court grants a party's motion to modify its conditions. A violation of either can be punished by contempt. In both instances, the party is ordered to do, or not to do, what the trial court orders. And, we review both under an abuse-of-discretion standard. Thus, whether the trial court entered an injunction—as in this case—or a simple order that made the same prohibition within the divorce decree appears to be a distinction without a difference. Husband never argues the trial court could not have simply ordered the same restrictions on the parties' visitation rights. In the end, even if there were error in adopting the permanent-injunctive form for this

prohibition within the decree, it was harmless error.

We cannot say the trial court abused its discretion by entering the injunction. We overrule Husband's third through sixth issues.

We affirm the trial court's judgment.

---

8. The following typical injunctive accouterments are not necessary to obtain injunctive relief in temporary orders under the family code: an affidavit or verified pleadings stating specific facts showing immediate and irreparable injury, loss, or damage; a definition of an injury and statement of why it is irreparable; a statement of why the order was granted without notice; an order setting cause for trial; and a bond. TEX. FAM.CODE ANN. § 105.001(b), (d).