**Affirmed and Opinion Filed December 13, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

## No. 05-23-00926-CV

## IN THE INTEREST OF R.O.M., M.C.M., AND E.S.M., CHILDREN

**On Appeal from the 330th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-16-25731**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Carlyle
Opinion by Justice Nowell

Father appeals the trial court's June 8, 2023 order in this suit to modify the parent-child relationship. In two issues, Father argues the trial court abused its discretion by reducing his possession rights because the relief does not conform to the pleadings and the evidence is insufficient to support the reduction. We affirm the trial court's order.

FACTUAL BACKGROUND

Father and Mother divorced in August 2020. They have three children together, R.O.M., M.C.M., and E.S.M. Father filed a petition to modify the parent-child relationship in November 2021. At the time of the bench trial on April 21, 2023, R.O.M. was 17 years old, M.C.M. was 14 years old, and E.S.M. was 11 years

old. The court signed a modification order on June 8, 2023, in which it reduced Father's possession rights to R.O.M. and M.C.M. The issues on appeal only relate to M.C.M.[1]

The parents' divorce decree states that Father's possession periods include every-other weekend and overnight on Wednesdays. The parties do not contest the evidence showing Father never exercised his possession rights as provided for in the final divorce decree, nor do they contest evidence Father has a poor relationship with R.O.M. and M.C.M. The parties dispute the reasons Father does not have a good relationship with his older daughters and has not exercised his possession rights.

Mother testified Father "never" has the children and "there's not been one single weekend that he's ever had possession of the children." She explained she is "with the children 24/7. . . I feel like I'm doing this on my own." Mother kept a calendar showing Father's assigned periods of possession compared to when he exercised his possession, and the calendar was admitted at trial.

Father testified he initially saw his children every weekend at Mother's house; he explained Mother let him visit with the children at her home whenever he wanted to during the eighteen months after the divorce. He conceded that he did not exercise all of his possession during these eighteen months, and he recalled that M.C.M. did not come to his house during that time. However, he also testified that, at various

---

[1] R.O.M. is now over 18 years old.

times after the divorce, either R.O.M. or M.C.M. "has come regularly to see me, that has totally died over the last year and a half, but before that I would have one or the other of them quite frequently."

Uncontested evidence showed M.C.M. consistently did not want to spend time with her father. Knowing M.C.M. did not want to come to his house, Father sometimes gave her permission not to do so. He testified: "I haven't had my kids for Christmas. I haven't had the kids for Father's Day. I haven't had them for any of the holidays I'm supposed to have them. I don't get explanations. I get told that I give them permission to not be with me." Father testified: "There has not been one time since this divorce that I've received all three kids as scheduled in the decree, ever."

Father agreed the girls feel he abandoned them, and one of his jobs as a father is to assure them that he would never abandon them again. He testified: "I've never abandoned them in the first place, but absolutely they need to know that I will never abandon them again." And yet, on one occasion he texted Mother: "I'll make you a deal. Give me custody of [E.S.M]. You can have the other two." Explaining the text, Father testified he was frustrated "after years and years of not being able to see them and [he was] just [at] a snapping point about what was happening."

Evidence was presented about one specific incident between M.C.M. and Father at a hotel when Father thought M.C.M. was being "defiant" and he sought to take her phone away from her. M.C.M.'s texts to her mom from the hotel stated:[2]

> Mom
> Dad just tackled me to the floor
> I need to leave
> Help
> Call the police
> He tackled me to the floor and pinned me to the wall
> Just cause I wouldn't give him my phone
> . . .
> Call the cops
> . . .
> He won't let me leave
> He's guarding the door
> Call the cops
> Please
> Please
> . . .
> His [girlfriend] got it on video of him sitting on top of me
> While he pinned me down
> Call the cops
> Please
> He's abusing me
> Tell the cops he's abusing me
> . . .
> Idk mom
> He's crazy
> I'm literally crying in the hallway
> And he's saying since I don't wanna stay he's taking my phone
> Like mom I literally can't rn
> I'm having like a panic attack
> . . .
> I don't wanna a be here
> He's liek chasing me down the hallways
> Please please please get me an alto or something

---

[2] Errors in the original texts.

Please

Please

I'm begging you

The police were called,[3] and they admonished M.C.M. for not listening to her father. Father testified he did not hurt M.C.M..

Kathleen Schofield, a licensed professional counselor, testified there have been "some pretty traumatic events for [M.C.M.] between her and her father," and she was aware of "some physical trauma" between M.C.M. and Father. As to the hotel incident, she testified: "it didn't seem like there was too much physicality, you know, and I didn't speak with [M.C.M.] about that." She believed there had been another instance of a physical engagement between them, but she did not have additional information. Father agreed he has had "some pretty ugly fights" with M.C.M.

The trial court judge met with R.O.M. and M.C.M. in chambers. *See* TEX. FAM. CODE § 153.009 (providing for interviews of children in chambers).

TRIAL COURT'S DECISION

The trial court signed a Final Memorandum Rendition on May 2, 2023, which states in part:

- Father has had minimal interaction with M.C.M. during the pendency of this suit;

---

[3] The record is not clear about who called the police.

–5–

- M.C.M. is indifferent toward Father on account of a "physical altercation over a phone and police were called"; and

- M.C.M. was "adamant that she did not want to visit with her father due to his treatment of her."

In the June 2023 Order in Suit to Modify Parent-Child Relationship, the trial court limited Father's visitation with M.C.M. to two, 2-hour lunches per month in a public restaurant.

LAW & ANALYSIS

**A.      Standard of Review**

We review a trial court's decision to modify a conservatorship order for a clear abuse of discretion. *In re A.Y.K., M.Y.K. & A.Y.K.*, No. 05-23-00590-CV, 2024 WL 4379942, at *2 (Tex. App.—Dallas Oct. 3, 2024, no pet. h.) (mem. op.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re M.A.M.*, 346 S.W.3d 10, 13 (Tex. App.—Dallas 2011, pet. denied)). In a family law case, under the abuse-of-discretion standard of review, legal and factual sufficiency of the evidence are not independent grounds of error, but they are relevant factors in the abuse-of-discretion analysis. *In re C.J.*, 689 S.W.3d 417, 420 (Tex. App.—Dallas 2024, no pet.). We review the evidence in the light most favorable to the trial judge's ruling, and we indulge every presumption in its favor. *Id.* If some probative and substantive evidence supports the order, there is no abuse of discretion. *Id.* at 420-21.

To determine whether the trial court abused its discretion, we engage in a two-pronged inquiry: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *In re A.Y.K.*, 2024 WL 4379942, at \*2. (citing *Vardilos v. Vardilos*, 219 S.W.3d 920, 921 (Tex. App.—Dallas 2007, no pet.)). The operative inquiry in the first question is the sufficiency of the evidence. *Id.* (citing *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.)). We must then decide whether, based on the elicited evidence, the trial court made a reasonable decision. *Id.* (citing *Moroch v. Collins*, 174 S.W.3d 849, 857 (Tex. App.—Dallas 2005, pet. denied)).

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." TEX. FAM. CODE § 153.002. When reviewing issues of best interest, Texas appellate courts look to the non-exhaustive list of factors articulated in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The *Holley* factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any

excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371–72. Father's briefs do not discuss the *Holley* factors.

As conservatorship determinations are "intensely fact driven," the trial court is in the best position to "observe the demeanor and personalities of the witnesses and can 'feel' the forces, powers, and influences that cannot be discerned by merely reading the record." *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021).

## B. Granting Relief Not Explicitly Requested

In his first issue, Father argues the trial court abused its discretion by reducing his possession because neither party pleaded for that relief and the issue was not tried by consent. Father asserts the trial court's order must be vacated because it fails to conform to the pleadings. *See* TEX. R. CIV. P. 301.

Father's Petition to Modify the Parent-Child Relationship alleged the circumstances of the children, a conservator, or other party had materially and substantially changed, and he requested the trial court appoint the parties as joint managing conservators "but alter[] the current allocation of the rights and duties of each conservator"; appoint him as the conservator with exclusive right to determine the children's primary residence; and award Mother a standard possession schedule. In his amended petition, Father asked that Mother be awarded a standard possession schedule with possession and access that could be limited or suspended based on the recommendation of professionals such as counselors or therapists involved in the case. He also prayed for general relief. In her counter-petition, Mother also claimed

–8–

changed circumstances, requested she be named sole managing conservator, and prayed for general relief.

At trial, Father's counsel requested an expanded standard possession schedule, while Mother argued the parties needed a "clear possession schedule." A few days later, Father filed a document titled "Father's Requested Relief" in which he requested:

- Expanded Standard access per the Texas Family Code;

- the exclusive right to make invasive medical decisions, educational decisions, and psychological decisions after meaningful consultation with Mother; and

- "[a]ny other provision the Court deems necessary for the best interests of the children."

Mother provided a proposed parenting plan at trial in which she requested the court name the parents as Joint Managing Conservators.

Neither parent specifically requested the trial court reduce Father's visitation with M.C.M. However, both parents clearly placed possession of the children before the trial court, and Father specifically requested the court modify the existing possession order.

We recently considered a complaint similar to Father's that arose after a trial court granted more relief in a SAPCR than the parties specifically requested, and we concluded the trial court acted within its discretion. *See In re A.Y.K.*, 2024 WL

4379942, at \*4–5. "In a child custody case such as this involving two parents as managing conservators, the trial court has only two individuals to whom it could assign rights—by granting relief to one party, the trial court implicitly denies that relief to the other." *Id.* at \*5. In this case, neither party specifically requested that Father's access to M.C.M. be curtailed. However, Father's pleadings seeking specific modifications to the existing possession order and requesting an order containing any other provision that the court deemed necessary for the best interest of the children, sufficiently placed the possession issue before the trial court. *See id.*

Further, as here, even when neither parent's pleading "specifically addresse[s] the challenged modifications, trial courts in SAPCRs are tasked with the duty of protecting the best interest of the child and are provided extensive powers, beyond that which they are granted in other types of suits, to ensure that duty is fulfilled." *Id.* (citing *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967) ("a suit properly invoking the jurisdiction of a court with respect to custody and control of a minor child vests that court with the decretal powers in all relevant custody, control, possession and visitation matters involving the child. The courts are given wide discretion in such proceedings.")). "Likewise, this Court has consistently held that 'pleadings are of little importance in child custody cases, and the trial court's efforts to exercise broad, equitable powers in determining what will be best for the future welfare of a child should be unhampered by narrow technical rulings.'" *Id.* (quoting *Peck v. Peck*, 172 S.W.3d 26, 35 (Tex. App.—Dallas 2005, pet. denied)). "Indeed,

to hold otherwise would produce absurd results, forcing a court to make incomplete or inconsistent orders that fail to fully protect the best interest of the child simply because [of] the parent's insufficient pleading. We have never put such restrictions on our trial courts in SAPCR cases, and we decline to do so today. As always, the best interest of the child is the primary consideration of the court, and courts must have a wide latitude in authority to ensure that the end result of litigation accomplishes this." *Id.* (citing TEX. FAM. CODE § 153.002; *Peck*, 172 S.W.3d at 35).

As discussed below in response to Father's second issue, considering the evidence in this case and the applicable standard of review, the trial court acted within its discretion to protect M.C.M.'s best interest when it exercised its broad, equitable powers and reduced Father's time with M.C.M. We overrule Father's first issue.

### C.  Sufficiency of the Evidence

In his second issue, Father argues the evidence is insufficient to support the trial court's decision to reduce his possession time with M.C.M.

The appellant bears the burden to ensure that a sufficient appellate record is presented to show reversible error. *In re C.J.*, 689 S.W.3d at 421–22. If an appellant fails to present a complete reporter's record on appeal, the appellate court must presume the omitted portions are relevant and support the trial court's judgment. *See id.* at 422; *see also* TEX. R. APP. P. 34.6(c)(4). "This means that 'points of error

–11–

dependent on the state of the evidence will be deemed to have been waived.'" *See id.* (internal quotation omitted).

In this case, the information missing from the appellate record is a record of the trial judge's interviews with M.C.M. and R.O.M, which were conducted pursuant to family code section 153.009 and could have been recorded and made part of the record. *See* TEX. FAM. CODE § 153.009 (Interview of Child in Chambers). The parties' briefs suggest the interviews were not recorded, and the record does not reflect that either party has attempted to obtain a reporter's record, if one exists, of those interviews. *See In re C.J.*, 689 S.W.3d at 422. We recently concluded that when, as here, there is no transcript from a child's interview conducted under section 153.009 and neither parent requested the interview be recorded, the interview constitutes evidence for the purposes of the missing-record presumption. *See id.* at 422–25. "Information obtained from interviewing a child in chambers can be used by the court in exercising its discretion in matters pertaining to the children, and we presume the trial court did so here." *Id.* at 423 (internal quotation marks omitted).

Ordinarily, an appellate review of the sufficiency of the evidence requires a complete reporter's record. *Shrime v. Kaptain*, No. 05-21-00172-CV, 2022 WL 17974691, at *5 (Tex. App.—Dallas Dec. 28, 2022, pet. denied) (mem. op.) (citing *Schafer v. Conner*, 813 S.W.2d 154, 155 (Tex. 1991) (per curiam)). Because the reporter's record is incomplete in this case, "we must presume that the omitted portions of the reporter's record are both relevant and support the trial court's

judgment." *Id.* (citing *$4,310 in $4,310 in U.S. Currency & 1993 Pontiac Auto. Vin: £1GNW543PC723734 v. State*, 133 S.W.3d 828, 829 (Tex. App.—Dallas 2004, no pet.); *Huber v. Agnew*, No. 05-16-00963-CV, 2017 WL 2464681, at \*1–2 (Tex. App.—Dallas June 7, 2017, no pet.)(mem. op.)); *see also In re C.J.*, 689 S.W.3d at 422. On this basis, we conclude the evidence is sufficient and the trial court did not abuse its discretion by reducing Father's time of possession with M.C.M.

Even if we did not apply the missing-record presumption, we would conclude the evidence is sufficient to support the trial court's order. The undisputed evidence shows Father never exercised his possession rights as set forth in the divorce decree. M.C.M. never regularly spent time with Father after the divorce, she spent fewer than a dozen nights at his house in the nearly three years between the divorce and trial, and she adamantly did not want to spend time with Father. Father and M.C.M. were sufficiently estranged that Father offered to "give" custody of M.C.M. to Mother as part of a Parent-Trap-type division of children.

The trial record includes testimony from Mother, Father, and mental health professionals who treated the family members as well as dozens of exhibits, which include long text message exchanges. The evidence shows M.C.M. and Father had "some pretty ugly fights" and "some pretty traumatic events" occurred between M.C.M. and Father in which there was "some physical trauma." M.C.M.'s fear of Father is reflected in her text messages in which she stated Father tackled and pinned

her to the floor, blocked her from exiting the room, and scared her to the extent that she implored her mother to call the police and find a rideshare so she could escape.

Having reviewed the record, we conclude the trial court had sufficient information upon which to exercise its discretion. Further, the evidence shows the trial court did not err in its application of discretion and its conclusion that M.C.M.'s best interest would be served by reducing Father's periods of possession. We overrule Father's second issue.

CONCLUSION

We affirm the trial court's June 8, 2023 Order in Suit Modifying Parent-Child Relationship.

|  | /Erin A. Nowell// |
|---|---|
| 230926f.p05 | ERIN A. NOWELL |
|  | JUSTICE |



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF R.O.M., M.C.M., AND E.S.M., CHILDREN

No. 05-23-00926-CV

On Appeal from the 330th Judicial District Court, Dallas County, Texas Trial Court Cause No. DF-16-25731. Opinion delivered by Justice Nowell. Justices Reichek and Carlyle participating.

In accordance with this Court's opinion of this date, the trial court's June 8, 2023 Order in Suit Modifying Parent-Child Relationship is **AFFIRMED**.

It is **ORDERED** that appellee Mother recover her costs of this appeal from appellant Father.

Judgment entered this 13th day of December, 2024.