

**NUMBER 13-16-00483-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

DONALD L. SCHINDLER,                                                   **Appellant,**

**v.**

ELIZABETH M. SCHINDLER,                                     **Appellee.**

**On appeal from the 25th District Court
of Lavaca County, Texas.**

# MEMORANDUM OPINION

**Before Justices Contreras, Longoria, and Hinojosa
Memorandum Opinion by Justice Longoria**

Appellant Donald L. Schindler appeals from a no-answer default final decree of divorce. By seven issues, which we construe as two with several sub-issues, Donald argues he is entitled to a new trial and the judge erred by denying his motion for new trial. We affirm in part and reverse and remand in part.

# I.    BACKGROUND

Donald and appellee Elizabeth Schindler were married in 2001.  The couple had two children during their marriage.  In February 2014, the couple ceased living together.  Elizabeth filed for divorce from Donald on September 9, 2014, asserting the marriage had become insupportable because of discord or conflict of personalities.  Donald was served with notice of the divorce filing and request for temporary orders on September 22, 2014.  Donald did not file an answer to the divorce petition or otherwise appear in the suit.  On October 1, 2014, a hearing was held on Elizabeth's motion for temporary orders, at which Donald did not appear.  The trial court granted Elizabeth's motion and signed default temporary orders on October 14, 2014.  Subsequently, the court ordered the case retained on the docket on October 16, 2015.

At a hearing on December 15, 2015, the court granted the divorce, and again Donald was not present.  Elizabeth offered into evidence her and Donald's "Schedule F" from their jointly filed 2013 tax return showing Donald had an approximate income of $136,757.00 that year.  She also offered into evidence testimony regarding her separate property obtained before the marriage, her request for child support and spousal maintenance, Donald's separate property, their separate bank accounts, and their separate personal property and possessions.  Elizabeth testified that Donald had exercised his visitation rights with the children as set forth in the temporary orders, primarily on weekends, some midweek visits, and some holidays.  In addition to her testimony, she offered into evidence an appraisal for her royalty interests in property located in Lavaca County and a proposed property division based on her testimony.  The court granted the no-answer default divorce and signed the final decree of divorce on

2

June 16, 2016. Donald filed a motion for new trial on July 18, 2016, and a hearing was held on August 16, 2016. The trial court denied the motion for new trial on August 30, 2016, and this appeal followed.

## II.   DISCUSSION

By seven issues, which we construe as two with several sub-issues, Donald asserts that the trial court erred by (1) denying his motion for new trial and (2) rendering a divorce decree that: (a) set the child support in an amount not within the guidelines; (b) granted him only a standard possession order when he is entitled to expanded standard visitation; (c) made Elizabeth sole managing conservator; (d) did not divide the community property in a manner that is just and right; (e) ordered him to pay spousal maintenance where the evidence was insufficient to establish entitlement to such payments; and (f) granted Elizabeth injunctive relief in the absence of sufficient evidence to support such relief and in ordering the injunctions to apply solely to him.

## A.    Motion for New Trial

In his first issue, Donald contends that the trial court erred in denying his motion for a new trial.

### 1.    Standard of Review and Applicable Law

When a default judgment is attacked by a motion for new trial, the critical question is: "Why did the defendant not appear?"  *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012) (quoting *Fid. & Guar. Ins. Co. v. Drewery Constr. Co.*, 186 S.W.3d 571, 574 (Tex. 2006)); *see Lynch v. Lynch*, 540 S.W.3d 107, 121 (Tex. App.—Houston [1st Dist.] 2017, pet. filed).  We review a trial court's decision to overrule a motion to set aside a default judgment and grant a new trial for abuse of discretion.  *Dolgencorp of Tex., Inc.*

*v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009). The Supreme Court of Texas established the standard for setting aside a default judgment in *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939). Under the *Craddock* test, post-answer as well as no-answer default judgments should be vacated and a new trial granted when the defaulting party establishes that: (1) the failure to answer or to appear was not intentional, or the result of conscious indifference, but was due to a mistake or an accident; (2) the motion for a new trial sets up a meritorious defense; and (3) granting a new trial will not cause delay or work other injury to the prevailing party. *In re R.R.*, 209 S.W.3d 112, 115 (Tex. 2006); *Craddock*, 133 S.W.2d at 126. When a defaulting party meets all three *Craddock*-test elements, a trial court abuses its discretion if it fails to grant a new trial. *Dolgencorp*, 288 S.W.3d at 926; *Old Republic Ins. Co. v. Scott*, 873 S.W.2d 381, 382 (Tex. 1994). When as here, no findings of fact and conclusions of law are filed, the denial of motions to set aside the default judgment and for new trial must be upheld on any legal theory supported by the evidence. *See Strackbein v. Prewitt*, 671 S.W.2d 37, 38 (Tex. 1984); *Lynch*, 540 S.W.3d at 121.

### 2.    Analysis

Beginning our analysis with the *Craddock* test, we must first determine whether Donald proved that his failure to file an answer or otherwise appear in the divorce proceedings was not intentional or the result of his conscious indifference. *See Craddock*, 133 S.W.2d at 126. In making our determination, we turn to Donald's actions and knowledge. *See Lynch*, 540 S.W.3d at 121 (citing *Dir., State Emp. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994)). The Texas Supreme Court has held that some excuse, although not necessarily a good one, will suffice to show that a defendant's

4

failure to file an answer was not because the defendant did not care. *In re R.R.*, 209 S.W.3d at 115. However,

> when the trial court conducts an evidentiary hearing on a motion for new trial and the party that obtained the default judgment presents controverting evidence at the hearing to show that the defaulted party acted intentionally or with conscious disregard to his rights, the question of why the defaulted party failed to answer presents a question of fact, which is resolved by the factfinder.

*Lynch*, 540 S.W.3d at 122 (citations omitted). As the factfinder, the trial court may generally believe all, none, or part of a witness's testimony. *Id.* In determining if Donald's factual assertions are controverted, we look to all the evidence in the record. *See Evans*, 889 S.W.2d at 269.

At the hearing on his motion for new trial, Donald testified that he doesn't recall being served with divorce papers though it was "possible that [he] did receive them." He explained that he was suffering from depression and was seeking medical help for his symptoms, but that until shortly before the hearing, nothing had been working. He stated that he was unable to function for full days at a time for a long period of time, and because of that, he was unable to participate in the divorce proceedings. He provided a note from a psychiatrist he had been seeing for the six months prior to the hearing on his motion for new trial.

When cross-examined, Donald noted that he received paperwork regarding the divorce from a sheriff, but could not recall when or whether it was the petition or not. It was also brought out through cross-examination that, during the pendency of the divorce, Donald acted in accordance with the temporary orders that were in place, including exercising his visitation with his children and paying Elizabeth financial support through February 2016. Furthermore, he testified that he had been working in 2014, when the

5

divorce was initiated by Elizabeth, and was able to work until November 2015, when his depression symptoms rendered him bed-ridden; it was from November 2015, until approximately March 2016, that he stated he was unable to work.

Not understanding a citation and then doing nothing following service does not constitute a mistake of law that is sufficient to meet the *Craddock* requirements. *See Bank One, Tex., N.A. v. Moody*, 830 S.W.2d 81, 84 (Tex. 1992) (citing *Butler v. Dal Tex Mach. & Tool Co.*, 627 S.W.2d 258, 260 (Tex. App.—Fort Worth 1982, no writ)); *In re R.R.*, 209 S.W.3d at 115. Here, although Donald does not claim he did not understand the citation, he does explain that he may have received the citation, but did nothing with it because of his depression.[1] Donald's testimony regarding his debilitating depression symptoms was controverted by the elicited testimony of his ability to work, exercise his visitation rights with his children, and maintain making payments to Elizabeth, among other things.

After reviewing the evidence of Donald's acts and of his knowledge, we conclude that the trial court could have reasonably determined that Donald acted with conscious indifference to the proceedings when he failed to answer the suit, and as a result, did not meet the first *Craddock* element. *See Craddock*, 133 S.W.2d at 126; *see also Evans*, 889 S.W.2d at 269 (stating that courts look to knowledge and acts of defaulting party to determine whether failure to answer or appear was intentional or due to conscious indifference). Accordingly, we hold that the trial court did not abuse its discretion when it denied Donald's motions to set aside the default judgment and for new trial. *See Lynch*, 540 S.W.3d at 126–27. We overrule Donald's first issue.

---

[1] Donald mentioned in his testimony during the hearing that this was not his first divorce, and in fact he understands the proceedings of a divorce.

**B.     Divorce Decree**

In issue two, Donald challenges the trial court's determinations of child support, visitation rights, conservatorship, property division, spousal maintenance, and injunctive relief.

**1.     Standard of Review and Applicable Law**

In a suit for divorce, "the petition may not be taken as confessed if the respondent does not file an answer." TEX. FAM. CODE ANN. § 6.701 (West, Westlaw through 2017 1st C.S.).  If the respondent in a divorce case fails to answer or appear, the petitioner must present evidence to support the material allegations in the petition.  *In re E.M.V.*, 312 S.W.3d 288, 291 (Tex. App.—Dallas 2010, no pet.).  Accordingly, a default judgment of divorce is subject to an evidentiary attack on appeal.  *Agraz v. Carnley*, 143 S.W.3d 547, 552 (Tex. App.—Dallas 2004, no pet.); *see Gonzalez v. Gonzalez*, 331 S.W.3d 864, 866 (Tex. App.—Dallas 2011, no pet.).

Most appealable issues in a family law case are evaluated under an abuse of discretion standard.  *In re A.B.P.*, 291 S.W.3d 91, 95 (Tex. App.—Dallas 2009, no pet.); *Gonzalez*, 331 S.W.3d at 866.  With regard to issues of custody, control, possession, child support, and visitation, we give the trial court wide latitude and will reverse the trial court's order only if it appears from the record as a whole that the trial court abused its discretion.  *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied); *see Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Garza v. Garza*, 217 S.W.3d 538, 551 (Tex. App.—San Antonio 2006, no pet.).  A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding principles.  *Gonzalez*, 331 S.W.3d at 866.  The trial court generally does not abuse

its discretion as long as some evidence of substantive and probative character exists to support the trial court's decision. *Id*.; *see Agraz*, 143 S.W.3d at 554.

Where sufficiency review overlaps the abuse of discretion standard, we engage in a two pronged inquiry: (1) did the trial court have sufficient information upon which to exercise its discretion; and (2) did the trial court err in its application of discretion? *Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex. App.—El Paso 1998, no pet.). The traditional sufficiency review comes into play with regard to the first question; however, our inquiry cannot stop there. We must proceed to determine whether, based on the elicited evidence, the trial court made a reasonable decision. Stated inversely, we must conclude that the trial court's decision was neither arbitrary nor unreasonable. *Id.*

### a. Child Support

Under Texas law, child support is generally determined by calculating the child support obligor's monthly net resources and applying statutory guidelines to that amount. *See* TEX. FAM. CODE ANN. §§ 154.062(a), 154.125 (West, Westlaw through 2017 1st C.S.); *see also id.* §§ 154.122 (amount of support determined by child support guidelines is presumed to be reasonable and in best interest of child), 154.123 (trial court may order child support payments in amount other than that established by guidelines if evidence rebuts presumption that application of guidelines is in best interest of child) (West, Westlaw through 2017 1st C.S.); *In re P.C.S.*, 320 S.W.3d 525, 532–33 (Tex. App.—Dallas 2010, pet. denied). The family code sets a guideline that an obligor who has two children should pay child support equal to twenty-five percent of the first $7,500 of his monthly net resources. TEX. FAM. CODE ANN. §§ 154.125, 154.126(a) (West, Westlaw through 2017 1st C.S.).

8

In accordance with the guidelines, the trial court ordered Donald to pay monthly child support of $1,842.00 for two children until the oldest child turned 18 or graduated from high school, whichever occurred later, and thereafter, $1,473.00 per month until the youngest child turned 18 or graduated from high school, whichever occurred later. At the hearing, Elizabeth presented evidence and testimony that Donald was self-employed and that, in 2013, his net annual earning potential was $136,757.00. The divorce was granted in December 2015. Donald contends that this is the only evidence presented regarding his resources and it was not sufficient for the trial court to make a calculation of child support liability. We disagree. Elizabeth testified as to her knowledge of Donald's income and supported that testimony with evidence of his income through a tax return. Her testimony was not mere speculation, but rather supported her contentions about Donald's earning potential. *See Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 235 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding that wife's testimony that husband earned $150,000.00 per year based on her research of his job was some evidence that he earned over $6,000.00 per month, warranting child support for two children of twenty-five percent of husband's net resources under child support guidelines). Because there is evidence of Donald's earning potential and income, the trial court did not abuse its discretion by requiring Donald to pay an amount of child support in accordance with the guidelines. We overrule Donald's second issue.

**b.     Possession and Visitation Order**

A trial court has broad discretion to fashion the terms of a decree related to custody, visitation, and possession. *In re Doe 2*, 19 S.W.3d 278, 281 (Tex. 2000); *Gillespie*, 644 S.W.2d at 451; *In re Marriage of Swim*, 291 S.W.3d 500, 504 (Tex. App.—

9

Amarillo 2009, no pet.). In matters of conservatorship, the public policy in this State is to assure continuing contact between children and parents who have established the ability to act in their child's best interest, provide a safe, stable, and nonviolent environment for the child, and encourage parents to share in their child's development after separation or divorce. TEX. FAM. CODE ANN. § 153.001(a)(1)–(3) (West, Westlaw through 2017 1st C.S.); *In Interest of N.P.M.*, 509 S.W.3d 560, 564 (Tex. App.—El Paso 2016, no pet.).

A court's primary consideration must always be the best interests of the children. TEX. FAM. CODE ANN. § 153.002. Where both parents are appointed as the child's managing conservators, the trial court specifies the rights and duties that are to be exercised by each parent. *Id.* § 153.071. While the guidelines in the standard possession order are intended to guide courts as to the minimum possession for a joint managing conservator, there is a rebuttable presumption that the standard possession order provides the reasonable minimum possession of a child for a parent named as a joint managing conservator and that the order is in the child's best interest. *Id.* §§ 153.251(a), 153.252(1), (2); *In Interest of N.P.M.*, 509 S.W.3d at 564. The trial court may deviate from the standard possession order, by rendering

> an order that grants periods of possession of the child as similar as possible to those provided by the standard possession order if the work schedule or other special circumstances of the managing conservator, the possessory conservator, or the child, or the year-round school schedule of the child, make the standard order unworkable or inappropriate.

TEX. FAM. CODE ANN. § 153.253 (West, Westlaw through 2017 1st C.S.).

Donald argues specifically that he was not awarded an "expanded" standard possession order. He points to section 153.317(a) to argue that the court should have

10

granted Donald an alternative "expanded" standard possession order. *See id.* §

153.317(a).[2] However, Donald neglects to include section 153.317(b) in his argument:

> A conservator must make an election under Subsection (a) before or at the time of the rendition of a possession order. The election may be made:
>
> (1) in a written document filed with the court; or
>
> (2) through an oral statement made in open court on the record.

*Id.* § 153.317(b). The record does not reflect, nor does Donald present evidence of, any

election by him to be awarded an alternative standard possession order under section

153.317(a). Therefore, the trial court did not abuse its discretion by granting standard

possession.

Donald also argues that the court did not have sufficient evidence to limit his

visitation beyond the standard possession order by reducing his weekday visits from 6:00

p.m. to 8:00 p.m. on Thursday evenings to 5:00 p.m. to 6:00 p.m. on Thursdays. During

the default divorce hearing, Elizabeth testified that the change would be suitable based

on the history of their visitation schedule while the temporary orders were in place and

the need to change the exchange of the children to a public location, based on a criminal

trespass warning Donald received making Elizabeth's residence an unacceptable

location to exchange the children. The trial court, having heard this testimony, did not

---

[2] Section 153.317(a) states:

> If elected by a conservator, the court shall alter the standard possession order under Sections 153.312, 153.314, and 153.315 to provide for one or more of a selection of alternative beginning and ending possession times for the described periods of possession, unless the court finds that the election is not in the best interest of the child as described by this section.

TEX. FAM. CODE ANN. § 153.317(a). While this statute allows for alternative visitation schedules, it does not specifically call for "expanded" visitation.

11

abuse its discretion in altering the weekday visit schedule.  We overrule Donald's third issue.

### c. Conservatorship

Section 153.071 of the Texas Family Code provides that, when both parents are appointed as conservators of the child, the court shall specify the rights and duties of the parents that are to be exercised by each independently, by joint agreement of the parents, and exclusively by one parent.  *Id.* § 153.071.  Joint managing conservatorship is defined as the sharing of the rights and duties of a parent by two parties, even if the exclusive right to make certain decisions is awarded to one party.  *Id.* § 101.016; *see Albrecht v. Albrecht*, 974 S.W.2d 262, 265 (Tex. App.—San Antonio 1998, no pet.) ("In joint managing conservatorship, one parent is usually given slightly greater powers than the other parent."); *Garza*, 217 S.W.3d at 553.

Here, the divorce decree names both Donald and Elizabeth as joint managing conservators.  Donald takes issue with the trial court's order that Elizabeth shall have the exclusive right to:  (1) consent to medical, dental, and surgical treatment involving invasive procedures; (2) consent to psychiatric and psychological treatment of the children; and (3) make decisions concerning the children's education.  Donald emphasizes that the only evidence on the issue of parental rights and duties were statements from Elizabeth that the children live with her, she is their primary conservator, and she was responsible for their educational decisions, their daily activities, and medical decisions.  The record reflects such testimony from Elizabeth.  It is within the trial court's discretion to allocate between the parents, independently, jointly, or exclusively, all of the remaining rights and duties of a parent as provided by Chapter 151.  TEX. FAM. CODE ANN.

§ 153.134(b)(4). Where the trial court was presented with sworn testimony of Elizabeth's duties as the primary conservator for their children, there was no abuse of discretion in awarding some rights exclusively to Elizabeth. We overrule Donald's fourth issue.

### d. Community Property

Community property consists of all property, other than separate property, acquired by either spouse during marriage. TEX. FAM. CODE ANN. § 3.002 (West, Westlaw through 2017 1st C.S.). A trial court is charged with dividing the community estate in a "just and right" manner, considering the rights of both parties. *Id.* § 7.001; *Sandone v. Miller-Sandone*, 116 S.W.3d 204, 206–07 (Tex. App.—El Paso 2003, no pet.) Although the trial court is not required to divide the community estate equally, its division must be equitable. *Sandone* 116 S.W.3d at 207. The trial court's discretion is not unlimited, and there must be some reasonable basis for unequal division. *Id.*

Elizabeth was the only person to testify as to the community property. Through her testimony, an exhibit was admitted showing a proposed property division based on the values of the community property and debts owed. The trial court heard from Elizabeth that the exhibit was a summary of her request for division of the property and that it was "fair and equitable" based on her "knowledge of the community estate."

Donald contends that the exhibit was admitted in error because Elizabeth did not testify as to the requisite knowledge of her familiarity with the market values of the property.[3] He further argues that the evidence was insufficient to divide the property as the trial court did. As the party challenging the division of property, Donald bears the burden of demonstrating from the evidence in the record that the trial court's division was

---

[3] To the extent Donald argues the exhibit was inadmissible evidence, he waived this issue because there was no objection at trial. TEX. R. APP. P. 33.1.

so unjust and unfair as to be an abuse of discretion. *Banker v. Banker*, 517 S.W.3d 863, 870 (Tex. App.—Corpus Christi 2017, pet. denied). Here, the trial court was presented with testimony from Elizabeth that the exhibit she prepared was based on her knowledge of the community estate and supported an equitable distribution. The trial court admitted the exhibit into evidence for consideration in determining the division of the estate in the divorce decree. Because the trial court was presented with uncontested evidence supporting the values and debts related to the community estate and ordered the division on the basis of such information, we hold that Donald did not meet his burden to show that the trial court's division was an abuse of discretion. We overrule Donald's fifth issue.

### e. Spousal Maintenance

The purpose of spousal maintenance is to provide temporary and rehabilitative support for a spouse whose ability to support herself has eroded over time while engaged in homemaking activities and whose capital assets are insufficient to provide support. *O'Carolan v. Hopper*, 71 S.W.3d 529, 533 (Tex. App.—Austin 2002, no pet.). The trial court may, in its discretion, award spousal maintenance only if the party seeking maintenance meets specific eligibility requirements. *See* TEX. FAM. CODE ANN. § 8.051 (West, Westlaw through 2017 1st C.S.); *Pickens v. Pickens*, 62 S.W.3d 212, 214–15 (Tex. App.—Dallas 2001, pet. denied). Determining the spouse's minimum reasonable needs is a fact-specific determination done on a case-by-case basis. *Amos v. Amos*, 79 S.W.3d 747, 749 (Tex. App.—Corpus Christi 2002, no pet.). We review the trial court's decision to award spousal maintenance under an abuse of discretion standard. *Id.*; *Deltuva v. Deltuva*, 113 S.W.3d 882, 888 (Tex. App.—Dallas 2003, no pet.). Under the abuse of discretion standard, legal and factual sufficiency of the evidence are not independent

14

grounds for asserting error, but they are relevant factors in assessing whether the trial court abused its discretion. *Brooks v. Brooks*, 257 S.W.3d 418, 425 (Tex. App.—Fort Worth 2008, pet. denied); *Diaz v. Diaz*, 350 S.W.3d 251, 254 (Tex. App.—San Antonio 2011, pet. denied).

When divorce is sought in a marriage lasting ten years or more, a spouse may request spousal maintenance if she lacks sufficient property to meet her minimum reasonable needs and cannot support herself due to insufficient earning capability. *Pickens*, 62 S.W.3d at 215. However,

> [i]t is a rebuttable presumption that maintenance under Section 8.051(2)(b) is not warranted unless the spouse seeking maintenance has exercised diligence in:
>
> (1) earning sufficient income to provide for the spouse's minimum reasonable needs; or
>
> (2) developing the necessary skills to provide for the spouse's minimum reasonable needs during a period of separation and during the time the suit for dissolution of the marriage is pending.

TEX. FAM. CODE ANN. § 8.053(a) (West, Westlaw through 2017 1st C.S.).

The record reflects that Elizabeth is a hall manager and secretary for the Knights of Columbus Hall, earning approximately $2,000.00 a month. Elizabeth testified that Donald had a greater source of income and earning potential than she does and it would take her time to develop additional skills to further her employment and receive a greater income. She requested Donald be ordered to pay $500.00 per month for the maximum period of 60 months. *See Id.* § 8.054 (West, Westlaw through 2017 1st C.S.). Elizabeth provided no testimony as to her expenses and needs that her current income could not meet. She provided no explanation of what type of skills she needed in order to become

15

more gainfully employed, nor did she provide testimony regarding an estimate of how long it would take to acquire new skills. Here, the only testimony was that she needed some time to develop additional skills to increase her income. There was insufficient evidence presented upon which the trial court could exercise its discretion to award spousal maintenance. Therefore, without supporting probative evidence showing the reasonableness, the trial court erred by awarding spousal maintenance. We sustain Donald's sixth issue.

### f.    Injunctive Relief

Donald's argument regarding the permanent injunctions revolves around the "morality" injunction in which the trial court enjoined Donald from "permitting an unrelated adult with whom [Donald] has an intimate or dating relationship to remain in the same residence with the children between the hours of 10:00 p.m. and 8:00 a.m." There was no such imposition on Elizabeth.

In *Peck*, which both Donald and Elizabeth rely on for their arguments, the court of appeals affirmed the trial court's decision to make a similar imposition on both husband and wife. *Peck v. Peck*, 172 S.W.3d 26, 35 (Tex. App.—Dallas 2005, pet. denied). The court in *Peck* also noted "We are unaware of any legal authority that would compel the trial court to rule differently on this issue." *Id.* There, husband and wife were both enjoined from allowing a person of the opposite sex with whom they have or might have an intimate or dating relationship with to remain overnight in the same residence or lodging as their child. *Id.* at 33. The trial court in *Peck* considered the testimony of both husband and wife relating to a current intimate relationship husband was in. *Id.* After hearing considerable testimony, the trial court held that it was in the best interests of the

16

child if neither parent had an unrelated adult remain overnight in the same residence as the child. *Id* at 35.

Here, however, the only evidence relating to the injunction was Elizabeth's request for the injunction in the temporary orders in her petition for divorce and her affirmative testimony to continue the injunctions from the temporary orders in the final decree. While the trial court's discretion is not unlimited, the trial court is granted broad discretion to consider the best interests of the child in determining the restrictions in the final decree. *Id.*; *see Capello v. Capello*, 922 S.W.2d 218, 220 (Tex. App.—San Antonio 1996, no writ) ("The trial court, in considering the best interest of the child, had the discretion to weigh and compare appellant's inconvenience with the safety and well-being of the child.").

In the final divorce decree, the trial court found that "based on public policy considerations stated in section 153.001 of the Texas Family Code, it is in the best interests of the children" that Donald not permit an unrelated adult to remain in the residence with his children overnight. *Cf. Peck*, 172 S.W.3d at 35 (court imposed the restriction on both husband and wife and "had considerable time with the parties and undoubtedly understood better than this Court could the 'forces, powers, and influences' that governed the relationships between and among Husband, Wife, and their son."). Therefore, with only Elizabeth's petition and minimal testimony available in determining the injunction was necessary, we find that the trial court abused its discretion in entering the injunction preventing only Donald from permitting an unrelated adult to remain in the residence with his children overnight. We sustain Donald's seventh issue.

### III.    CONCLUSION

17

We affirm the trial court's divorce decree except for the parts pertaining to spousal maintenance and the injunction preventing Donald from permitting an unrelated adult to remain overnight in his residence during his visitation with his children.  We reverse these two portions of the decree and remand this case to the trial court for a new trial solely on these issues.

NORA L. LONGORIA
Justice

Delivered and filed the
28th day of June, 2018.