# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00399-CV

---

**Mark Thomas Pearce, Appellant**

**v.**

**Kristen Leigh Pearce, Appellee**

---

### FROM THE 395TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 20-3143-F395, THE HONORABLE RYAN D. LARSON, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Appellant Mark Thomas Pearce appeals from the district court's decree of divorce of Mark and his ex-wife, appellee Kristen Leigh Pearce.[1]  In eleven issues on appeal, which we have grouped into three issues for brevity, Mark challenges the district court's decisions: (1) allowing Kristen to have the exclusive right to designate their children's primary residence in Williamson County and contiguous counties; (2) regarding possession of and access to the children; and (3) imposing a "morality clause" involving the children's presence around the parents' romantic partners.  We will affirm the divorce decree.

---

[1]  Because the parties share the same surname, we will refer to them using their first names.

# BACKGROUND

Mark and Kristen married in 2017. During their marriage, they had two children, WCP ("William"), born in 2017, and ARP ("Alexis"), born in 2019.[2] Kristen filed for divorce in 2020, alleging that Mark suffered from substance abuse, sex addiction, and mental-health issues, including anger and rage. Kristen requested that Mark have supervised possession of the children, that he be ordered to submit to random alcohol and drug testing, and that he be required to use and obtain a Soberlink monitoring device.[3]

The case proceeded to a bench trial in 2022. The evidence at trial, which we discuss in more detail below, included the testimony of Kristen; Mark; Mark's first ex-wife, Kristen Cusick; Diane Arnett, a co-parenting therapist who worked with Mark and Kristen; Kelly Broome, a toxicologist who testified regarding Mark's drug-test results; and licensed psychologist Dr. Daphny Ainslie, a court-appointed custody evaluator. Exhibits admitted into evidence included Dr. Ainslie's custody evaluation, an alcohol assessment of Mark, Mark's drug-test results, and a discharge summary from the counseling center where Mark attended and completed an intensive outpatient programming for chemical dependency.

After trial, the district court entered its final divorce decree, appointing Kristen and Mark joint managing conservators of the children. As relevant here, the decree included provisions allowing Kristen to have the exclusive right to designate their children's primary residence in Williamson County and contiguous counties; a five-phase step-up possession schedule for Mark that included conditions for Mark to obtain access to the children; and a

---

[2] For the children's privacy, we will refer to them by aliases. *See* Tex. R. App. P. 9.9(a)(3).

[3] Soberlink is an online alcohol monitoring system that automatically sends breathalyzer results to designated individuals.

morality clause applicable to both parents containing limitations on their romantic partners being in the presence of the children.

Mark filed a motion for new trial, which was overruled by operation of law, and requested findings of fact and conclusions of law, which the district court made. The findings relevant to this appeal include the following:[4]

**General**

The parties married in 2017 and separated in 2020.

Kristen is a stay-at-home mom, and Mark is a realtor.

At the time of trial, the parties were following a Step-Up Possession Schedule from the temporary orders, with Mark in Phase 4.

**Drug / Alcohol / Parenting Issues**

Mark has a pattern of alcohol and drug usage, including ingesting cocaine on multiple occasions and crack cocaine at least once. Mark admitted his last cocaine usage was December 2020, struggles with alcohol and marijuana usage, and that he has ingested the following drugs in the past: marijuana, cocaine, crack cocaine, mushrooms, ecstasy, and non-prescribed Viagra.

Mark had a DWI in 2004 and has driven his children after he had consumed alcohol or ingested marijuana.

This Court found the testimony and recommendations of Dr. Daphny Ainslie, a court-appointed Custody Evaluation expert, to be credible; she issued a report with recommendations that this Court finds credible.

---

[4] Many of the district court's findings included references to the volume and page number of the reporter's record where evidence supporting the finding could be found. We have removed those references to make the findings easier to read.

Dr. Ainslie diagnosed Mark with moderate substance abuse disorder and moderate alcohol abuse disorder. She determined Mark has a pattern of alcohol use leading to clinically significant impairment or distress. Mark was also found to have a history and pattern of sex addiction. Dr. Ainslie recommended that Mark remain free of any substance use before, while having possession of the children, or after.

Mark has used alcohol since the age of 15. Mark has stated that when he has not drunk for more than two days, he suffered physical effects, indicating dependence on use and tolerance to use of alcohol.

Mark presented with a strong desire to use alcohol even though he has had persistent or recurrent social or interpersonal problems caused by the effects of alcohol, indicating propensity for alcohol abuse.

Dr. Ainslie recommended Mark abstain from all drug and alcohol use, whether in possession of the children or not, because he suffers from long-lasting, prevalent substance abuse that has contributed significantly to the problems in the family system, even leading to cancellation of visits with the children. Dr. Ainslie determined Mark refuses to acknowledge the problems in this area of his life.

Dr. Ainslie recommended Mark's access to the children be predicated on: (a) receiving psychotherapy with a professional trained in dual diagnosis of substance abuse and mood disorders; (b) meeting with a mental health professional who treats sex addiction; (c) receive EMDR treatment for trauma; (d) terminating therapeutic sessions only at the recommendation of the professional; (e) working on coping skills, depressive symptoms, impulsivity, idealization of others, compulsive behaviors, interpersonal needs, self-soothing behaviors, and empathy for others; (f) attending Alcoholics Anonymous meetings, securing a sponsor, and working the program; (g) abstaining from alcohol and controlled substances at all times.

Mark views pornography while supervising or around the children. Dr. Ainslie recommended the children have no access to any device used by an adult to view pornography.

Dr. Ainslie found that Mark was defensive and suffered from stress in his current environment, alcohol abuse or dependence, and unusual ideas or beliefs, drug abuse or dependence, and sensation-seeking behavior.

4

Dr. Ainslie recommended the parties not bring romantic partners around the children.

Dr. Ainslie recommended Kristen be allowed to designate the children's primary residence in Travis, Williamson, or contiguous counties.

Co-Parenting therapist Diane Arnett testified and provided a report to the Court. Arnett testified she met the parties in February 2021, having 43 joint party meetings, seven individual meetings with Mark and six individual meetings with Kristen. This Court finds her testimony and report credible.

Arnett recommended Mark continue his substance abuse and mood disorder therapy because it is in the best interest of the co-parenting relationship.

## Mark's Evasive Behavior and Lack of Cooperation / Truthfulness

Mark's Rorschach testing indicated narcissistic elements and propensity to focus on his own needs instead of others.

Arnett opined Mark sees himself as a victim and has not taken ownership for his drug and alcohol abuse.

Mark was evasive in regard to the court-ordered testing, including cutting his hair short (necessary for drug tests), dying his hair, and diluting drug tests.

Mark submitted multiple diluted tests during March, April, and May 2021. (March 22 & 29, 2021; April 27, 2021; May 24, 2021). Mark failed a Soberlink test in September 2021.

Mark testified he continues to interact with and associate with friends he used to drink and use drugs with. There is concern that when Mark possesses the children, they will be exposed to Mark's romantic interests or former acquaintances/friends from his substance use days.

Arnett reported Mark admitted numerous times that [he] found Dr. Ainslie's substance use, therapy, and co-parenting recommendations too numerous and that he was not going to do the treatment.

Mark admitted to using cocaine only once long ago, but Arnett discovered Mark's test result during this proceeding revealing ingestion in late 2021.

Mark told Arnett he was cleared by counselors of alcohol issues but Arnett later learned he had been coded as alcohol dependent for purposes of insurance and that Dr. Ainslie had diagnosed him with moderate alcohol and substance abuse disorder.

Dr. Ainslie opined that Mark's refusal to follow her recommendations in the five months since her Custody Evaluation report issued indicates he continues to believe he does not have a substance abuse problem.

Mark did not want to have to abstain from alcohol during the divorce proceeding even though advised to do so by the professionals.

Since the case began and testing required, Mark admitted he has frequented bars.

Dr. Ainslie had concerns about Mark's consistent use of his prescribed Adderall after reviewing Kelly Broome's report revealing that the drug did not appear in 50% of the tests (total of 40 urine and hair follicle tests).[5]

**Drug Testing During Proceeding**

After being subjected to urine, hair follicle, and breath testing (Soberlink) during the proceeding, Mark failed or diluted multiple tests.

Toxicologist Kelly Broome reviewed Mark's test results. He provided testimony and a report that the Court finds credible.

Broome opined Mark exhibited behaviors indicative of someone trying to provide inaccurate test results by diluting urine and dying his hair. Mark submitted multiple diluted tests during March, April, and May 2021. (March 22 & 29, 2021; April 27, 2021; May 24, 2021). Mark failed a Soberlink test in September 2021.

---

[5]    Mark had been prescribed Adderall to treat attention deficit hyperactivity disorder (ADHD). However, the district court heard evidence that the medication also helped stabilize Mark's moods and regulate his emotional responses to stressors, which was why Dr. Ainslie was concerned about him not taking the medication as prescribed.

Mark's claim that a test came back positive because of accidental contact (he inadvertently carried cocaine in his ball cap) is not credible. Broome, who is trained in contact exposure, opined that Mark's claim is not credible because metabolites appearing in the drug test reveal his body had consumed the cocaine.

Broome testified that if Mark was ingesting Adderall twice a day as prescribed the substance should appear in his drug tests. Once the diluted tests ended, Mark's tests failed to show the presence of Adderall. Mark admitted that he has not been taking Adderall twice a day as prescribed.

Broome recommended observed testing to prevent false urine or dilution. He recommended fingernail testing as it is hard to fake. He recommended testing fingernails every four months to capture a lengthy period of potential substance use. Broome also noted tests are available that show smaller amounts of substances, such as the lower Adderall dosage sometimes taken by Mark despite the prescription.

Broome testified that if usage during possession of the children is the concern, then urine testing the Monday after possession would reveal usage from the prior four days. He also recommended testing of hair from the scalp, as opposed to elsewhere, which could show usage for the prior 90 days. Breath testing is the best indication of usage at the exact time, but it will not reveal usage 12 hours before the testing. To fill gaps, Broome recommends requiring Soberlink testing.

## Agreements to Abide by Future Requirements

Mark agreed to attend AA meetings if he is ordered to not drink alcohol. Mark agreed to abstain from drinking alcohol in the future if the judge so orders.

Mark agreed to attend therapy with an expert who is trained in moderate substance and alcohol abuse as well as sex addiction if the judge so orders.

Mark agreed to work with a parenting coach.

At the time of trial, Mark testified he no longer needs testing. Mark refused to agree to any testing going forward.

This appeal followed.

7

## STANDARD OF REVIEW

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code § 153.002. "As conservatorship determinations are 'intensely fact driven,' the trial court is in the best position to 'observe the demeanor and personalities of the witnesses and can "feel" the forces, powers, and influences that cannot be discerned by merely reading the record.'" *In re J.J.R.S.*, 627 S.W.3d 211, 218 (Tex. 2021) (quoting *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002); *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.)). "A trial court's determination of what is in the child's best interest, specifically the establishment of terms and conditions of conservatorship, is a discretionary function." *Id.* (citing *MacCallum v. MacCallum*, 801 S.W.2d 579, 582 (Tex. App.—Corpus Christ–Edinburg 1990, writ denied)). "The trial court's judgment will be reversed only when it appears from the record as a whole that the court has abused its discretion." *Id.* (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982)). "A trial court abuses its discretion when it acts 'without reference to any guiding rules or principles; or in other words, [when it acts] arbitrarily or unreasonably.'" *Id.* (quoting *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)). Reviewing courts are to "give wide latitude to the trial court's determinations on custody, control, possession, and visitation" of children. *Iliff v. Iliff*, 339 S.W.3d 126, 133 (Tex. App.—Austin 2009), *aff'd*, 339 S.W.3d 74 (Tex. 2011).

Under this standard, legal and factual sufficiency of the evidence are not independent grounds for asserting error but are relevant factors in determining whether the trial court abused its discretion. *See Coburn v. Moreland*, 433 S.W.3d 809, 823 (Tex. App.—Austin 2014, no pet.); *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied).

8

"In determining whether the trial court abused its discretion, we consider whether the trial court had sufficient evidence upon which to exercise its discretion and, if so, whether it erred in the exercise of that discretion." *Coburn*, 433 S.W.3d at 823. "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the court's decision." *Id.*

Additionally, in this case, the district court made extensive fact findings. "Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon questions" and "are reviewable for legal and (factual) sufficiency of the evidence by the same standards as applied in reviewing the legal (and factual) sufficiency of the evidence supporting a jury's finding."[6] *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). When conducting a legal-sufficiency review, we consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). When conducting a factual-sufficiency review, we consider all the record evidence and set aside the trial court's order only if the evidence is so weak as to make the order clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

---

[6] We note that in his brief, Mark fails to identify with particularity the fact findings that he believes should be set aside. "The general rule is that if the trial court's findings of fact are not challenged by a point of error on appeal, they are binding upon the appellate court." *Trammell v. Trammell*, 485 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2016, no pet.). "However, a challenge to an unidentified finding of fact may be sufficient for review if the specific findings of fact which the appellant challenges can be fairly determined from the argument, the nature of the case, or the underlying legal theories." *Id.* In this case, we can fairly determine the findings that Mark is challenging based on the arguments raised in his brief and the issues that were contested in the court below. *See id.*; *see also* Tex. R. App. P. 38.1(f) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included."); *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 213-14 (Tex. 2020) (explaining that briefing rules are to be construed liberally to "reach the merits of an appeal" whenever possible).

**DISCUSSION**

**Geographic restrictions**

In his first and second issues, Mark challenges the district court's decision allowing Kristen to have the exclusive right to designate their children's primary residence in Williamson County and contiguous counties. Mark does not oppose the children's primary residence being Williamson County, which is where both he and Kristen reside. Instead, he argues that the geographic restriction should not include contiguous counties because it is "important that the children are not in long car rides going back and forth to school and the other parent's residence" and because "[i]f the children live 45 minutes to an hour away, it will be very difficult for Mark to attend the children's activities and doctor's appointments."

In rendering an order appointing joint managing conservators, the court shall designate the conservator who has the exclusive right to determine the primary residence of the child and establish, until modified by further order, a geographic area within which the conservator shall maintain the child's primary residence or specify that the conservator may determine the child's primary residence without regard to geographic location. Tex. Fam. Code § 153.134(b)(1). In establishing a child's primary residence, the paramount consideration should be the child's best interest, and the trial court should "take account of the Family Code's policy goals of 'assur[ing] that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child,' 'provid[ing] a safe, stable, and nonviolent environment for the child,' and 'encourag[ing] parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.'" *Gonzales v. Maggio*, 500 S.W.3d 656, 662 (Tex. App.—Austin 2016, no pet.) (quoting Tex. Fam. Code § 153.001(a)). The determination of where a child should primarily reside is an

10

"intensely fact-driven" inquiry and "no bright-line test can be formulated." *Lenz,* 79 S.W.3d at 18-19.

Here, Dr. Ainslie, the court-appointed child custody evaluator, recommended that the children's primary residence be "within Travis, Williamson and contiguous counties." When asked during her trial testimony why she recommended "a geographical restriction that was that large," Dr. Ainslie testified,

> I did that because I wasn't sure—I mean, in these divorce cases, people may stay in a marital home/residence, may sell and move. I wasn't sure what was happening with the parties. I'm aware that Mr. Pearce is in a rental house or that's the house that I visited when I met with him for his home visit. So I wasn't sure where these parties would go or what was going to happen.

> What I do want is to have no burden on the kids going back and forth between these homes. They're really young. I'm aware of even nap schedules that need to be maintained. So I wrote this in there. I guess, in some ways, that can be a large area; in some ways, it can be a small area. But my intention is, is for these parents to live close enough that the kids are not burdened by, you know, spending an hour in the car each.

We conclude that this is some evidence of a substantive and probative character to support the district court's determination that the children's primary residence should be in Williamson County or contiguous counties. Dr. Ainslie testified that Mark was at one point living in a rental house, and Kristen testified that she currently lives with her parents. Because Dr. Ainslie was not sure "where these parties would go" after the divorce or "what was going to happen" with their living situations, it was not an abuse of discretion for the district court to determine that the children's primary residence should be in either Williamson or contiguous counties.

We overrule Mark's first and second issues.

11

**Possession and access**

In his third through ninth issues, Mark challenges various decisions by the district court regarding his possession of and access to the children. Specifically, he asserts that the district court abused its discretion or erred by ordering him to continue using a breath-alcohol-content (BAC) monitoring device, subjecting him to random drug testing, ordering that his possession be subject to a five-phase step-up possession schedule, and ordering that his possession be subject to conditions related to his drug and alcohol use, including the appointment of a case manager to monitor Mark's progress in treatment and therapy.

All the possession and access conditions that Mark challenges on appeal were based on evidence of Mark's history of drug and alcohol abuse and addiction. Mark acknowledged using alcohol, marijuana, cocaine, mushrooms, ecstasy, and non-prescribed Viagra in the past. He has been using alcohol since he was 15 years old, and he acknowledged to Dr. Ainslie that after more than two days of non-use, he starts experiencing symptoms of alcohol withdrawal, which indicated to Dr. Ainslie that he is dependent on alcohol. Dr. Ainslie diagnosed Mark with moderate substance abuse disorder and moderate alcohol abuse disorder, which she believed caused him significant impairment or distress. Mark admitted that he used cocaine as late as December 2020, but testing indicated use in September 2021, which Mark claimed was based on accidental physical contact with the substance. Additionally, Mark diluted multiple hair-follicle drug tests in March through May of 2021 by dying his hair and cutting it short. Also, Dr. Ainslie noted in her report that Mark has a history of "sexually addictive behaviors," and Kristen testified that Mark browsed pornography while supervising the children. Moreover, Mark acknowledged that he continues to associate with friends who used drugs and alcohol with him.

Mark points to evidence in the record showing that he is overcoming his drug and alcohol issues, including an alcohol assessment by licensed clinical social worker and licensed chemical dependency counselor Mary Boone, who opined that Mark "can continue with casual moderate social use of alcohol if he so chooses"; evidence that Mark's last positive drug test was in September 2021, over eight months before trial; and a discharge summary from the counseling center where Mark attended and completed an intensive outpatient programming for chemical dependency, showing that Mark was shifting from blaming others for his behavior to focusing on his own behavior. However, this contrary evidence does not rise to the level that would enable us to conclude that the district court's orders regarding possession and access are arbitrary and unreasonable. Based on the entirety of the record, we cannot conclude that the district court abused its discretion in conditioning Mark's possession of and access to the children on compliance with various measures to monitor his drug and alcohol use, including requirements that he continue using a BAC-monitoring device and submit to random drug testing.

Mark also takes issue with phase five of the step-up possession schedule, which includes requirements that Mark maintain a minimum of twelve months of clean drug and alcohol testing and make meaningful progress in various treatment programs, including Alcoholics Anonymous, psychotherapy, and sex-addiction treatment. However, given the above evidence of Mark's drug and alcohol use and sex addiction, we cannot conclude that the district court abused its discretion in making the final phase of Mark's possession schedule contingent on his being free from drugs and alcohol for one year and meaningful progress in his treatment and therapy. Moreover, these requirements were based on professional recommendations by Dr. Ainslie and Dr. Arnett.

Finally, we discern no abuse of discretion in the district court's appointment of a case manager to monitor Mark's therapeutic progress. The case manager's duties included confirming with each party that Mark was participating in Alcoholics Anonymous meetings, had secured a sponsor, and was participating at the frequency and duration in accordance with the recommendations of his psychotherapist and therapist; confirming that Mark was attending appointments with his psychotherapist at the frequency and duration as recommended by the professional; confirming with each party when Mark began treatment with a therapist who is trained and specialized in sexual addictions; and confirming with each party when Mark began psychotherapy with a professional trained in dual diagnosis of substance use and mood disorders. These are not arbitrary or unreasonable requirements in light of evidence showing that Mark continued to struggle with alcohol and substance abuse.

We overrule Mark's third through ninth issues.

**Morality clause**

In his tenth and eleventh issues, Mark asserts that the district court "imposed an overly restrictive indefinite morality clause." The clause provides the following:

> Morality Clause - IT IS ORDERED that neither party shall introduce or have the children in the presence of a romantic partner or anyone they are in or have been in a sexual relationship with. IT IS FURTHER ORDERED that the parties shall not introduce the children to a romantic partner until they have been dating a minimum of six (6) months. IT IS FURTHER ORDERED that neither party shall allow someone with whom they have a romantic or dating relationship to spend the night while they are in possession of the children until the party is married to the new partner and the six (6) month time period has been met.

14

Mark argues that there is no evidence to support this provision, which in his view "greatly exceeded any restrictions reasonably required to protect the best interest of the children."[7]

"The trial court has broad discretion in fashioning restrictions on a parent's possession and access that are in the best interest of the children, including forbidding unrelated people from living or staying overnight at the parent's home during visitation." *Moreno v. Perez*, 363 S.W.3d 725, 739 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also Peck v. Peck*, 172 S.W.3d 26, 32–33 (Tex. App.—Dallas 2005, pet. denied) (affirming order enjoining both parties, while in possession of child, from permitting persons with whom they have or might have intimate or dating relationship from remaining overnight in same residence or lodging). This discretion includes the ability to limit a parent's sexual activities while the children are in their custody. *See Peck*, 172 S.W.3d at 32-35.

Here, Kristen testified that Mark had a history of living a "swinging" lifestyle and having multiple romantic partners. Kristen recounted that Mark "started dating two weeks after our separation. He's been with numerous paramours and swingers throughout the separation." She added, "He's proud of dating, proud of swinging." Kristen also testified that Mark has "still been hanging out with the same drug and swinger friends" in their neighborhood, frequenting bars, and continuing to attend parties. Mark acknowledged to Dr. Ainslie that he was a swinger and that "through this experience, he has made some amazing friends." Both Kristen and Mark acknowledged that they had a "threesome" with a mutual friend on four or five occasions during their marriage. Mark's ex-wife similarly testified that Mark introduced her to the "swinging" lifestyle. In her custody evaluation, Dr. Ainslie noted that Mark had a "demandingness related to

---

[7] Mark also asserts that this provision violates his right to privacy. However, he did not raise this complaint in the court below and thus failed to preserve any error on that ground. *See* Tex. R. App. P. 33.1(a); *In re L.M.I.*, 119 S.W.3d 707, 710–11 (Tex. 2003).

sexual encounters" and a history of "sexually addictive behaviors," and she concluded, "It is strongly cautioned at this time for neither parent to further confuse these very young children by introducing any other adults into their lives."

Based on the above evidence, we cannot conclude that the morality clause imposed by the district court, although certainly strict, constituted an abuse of discretion. The clause did not limit the persons with whom the parties could have a relationship but merely limited the contact those persons could have with the children. Additionally, the clause was not indefinite but allowed the parties to introduce the children to a romantic partner after they have been dating that person a minimum of six months, and it further allowed the parties to have their romantic partners spend the night while the parties are in possession of the children provided that the party is married to the new partner and the six-month time period has been met. Moreover, the clause applies to both parents, which militates against a finding that the clause constitutes an abuse of discretion. *See Peck*, 172 S.W.3d at 35. We cannot conclude on this record that the district court acted arbitrarily or unreasonably in placing these limitations on the contact that both parents' romantic partners could have with the children.

We overrule Mark's tenth and eleventh issues.

## CONCLUSION

We affirm the district court's divorce decree.

_____

Gisela D. Triana, Justice

16

Before Justices Baker, Triana, and Kelly

Affirmed

Filed:   June 27, 2024